IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**LBCMT 2007-C3 URBANA PIKE, LLC,**
*et al.*,

    **Plaintiffs**

    v.      CIVIL NO. JKB-12-3056

**ERIC D. SHEPPARD** *et al.*,

    **Defendants**

## MEMORANDUM

### *I. Allegations of the Complaint*

Plaintiffs in this case are the following special-purpose entities ("SPEs"):

- LBCMT 2007-C3 Urbana Pike, LLC

- LBCMT 2007-C3 Valley Retail, LLC

- LBCMT 2007-C3 Patrick Street, LLC

- LBCMT 2007-C3 Pines Boulevard, LLC

- LBCMT 2007-C3 Treasure Coast, LLC

- LBCMT 2007-C3 Highway 59 North, LLC

- LBCMT 2007-C3 South Mason Road, LLC

- LBCMT 2007-C3 Gunbarrel Road, LLC

According to the complaint, each Plaintiff SPE is a secured lender on a specific real estate development project developed by other SPEs that were formed by Defendants Eric D. Sheppard and Philip Wolman. Plaintiffs claim Defendants breached the individual recourse

guaranty they provided in connection with a portfolio of loans made by the Plaintiff SPEs to the SPEs controlled by Sheppard and Wolman. (Compl. ¶¶ 68-70, ECF No. 1.) The total debt under these loans is $14,091,139 plus interest. (*Id.* ¶ 70.) The lawsuit also claims that Sheppard and Wolman breached an individual recourse guaranty for one particular SPE, WSG Gold Mile Two, LLC ("Gold Mile Borrower"), by failing to pay rents collected from tenants by Gold Mile Borrower after it had defaulted on its loan. (*Id.* ¶¶ 74-79.) The last count makes a similar claim for misappropriated rents against Sheppard and Wolman in connection with another of their SPEs, WSG Riverview Two, LLC ("Riverview Borrower"). (*Id.* ¶¶ 84-89.)

The real property at issue as to Gold Mile Borrower and Riverview Borrower is located in Frederick County, Maryland. (*Id.* ¶¶ 14, 16.) The real property at issue as to the other Borrower SPEs is located in Virginia, Florida, Texas, and Tennessee. (*Id.* ¶¶ 15, 17, 18, 19, 20, 21.)

For each of the portfolio loans, a promissory note was executed by the individual Borrower SPE and assigned to its corresponding Lender SPE. Thus, LBCMT 2007-C3 Urbana Pike, LLC ("Riverview Lender"), holds a promissory note executed by the Riverview Borrower with a principal sum of $1,750,000, and LBCMT 2007-C3 Patrick Street, LLC ("Gold Mile Lender"), holds a promissory note executed by the Gold Mile Borrower with a principal sum of $4,160,000. (*Id.* ¶¶ 24, 38, Ex. 1 & Ex. 4.) The original lender on all of the loans was Lehman Brothers Bank, FSB, who assigned the promissory notes and their accompanying loan documents to the various Plaintiff Lenders. (*Id.* ¶¶ 22, 24, 27, 39, Ex. 2.)

A security interest in the Riverview Property (5461 Urbana Pike, Frederick, Maryland) was granted by WSG Riverview, LP ("Riverview Grantor"), to the original lender's trustee, in an indemnity deed of trust and security agreement ("Riverview Security Instrument"). (*Id.* ¶ 25.)

Similarly, a security interest in the Gold Mile Property (also in Frederick County, Maryland) was granted by WSG Gold Mile, LP ("Gold Mile Grantor"), to the original lender's trustee, in an indemnity deed of trust and security agreement ("Gold Mile Security Instrument"). (*Id.* ¶ 39.)

The Riverview Loan was further secured by a guaranty of recourse obligations ("Riverview Individual Recourse Guaranty") of the Riverview Borrower, with the guaranty being executed by Defendants Sheppard and Wolman as individuals. (*Id.* ¶ 28, Ex. 3.) Defendants executed an identical guaranty ("Gold Mile Individual Recourse Guaranty") to secure the obligations of the Gold Mile Borrower on the Gold Mile Loan. (*Id.* ¶ 41, Ex. 5.)

In addition, the Riverview Grantor executed a guaranty of payment ("Riverview Grantor Guaranty") of the Riverview Note, and Gold Mile Grantor executed a guaranty of payment ("Gold Mile Grantor Guaranty") of the Gold Mile Note. (*Id.* ¶¶ 26, 40.)

Finally, the Riverview Borrower and the Riverview Grantor executed a guaranty of payment ("Riverview Guaranty of Payment") of the "Guaranteed Obligations," defined as

> (i) the principal sum evidenced by the Other Notes, or so much thereof as may be outstanding from time to time, together with interest thereon at the rate of interest specified in the Other Notes and the Loan Agreement and all other sums, other than principal or interest, which may or shall become due and payable pursuant to the provisions of the Other Notes and the Loan Agreement and (ii) all other obligations and liabilities of the Other Borrowers under the Other Properties' Loan Documents.

(*Id.* Ex. 2, para. 2.) A list of the Other Borrowers was attached as Schedule A to the Guaranty of Payment and included all of the properties that are subjects of this lawsuit with the exception of the Riverview property.

Plaintiffs allege that Riverview Borrower and Gold Mile Borrower have defaulted on payment of the Riverview Note and the Gold Mile Note, respectively. (*Id.* ¶¶ 30, 43.) Further, they allege the defaults resulted in automatic termination of Riverview Borrower's and Gold

3

Mile Borrower's rights to collect tenant rents, and they allege Riverview Borrower and Gold Mile Borrower have failed to deliver any rents to Riverview Lender and Gold Mile Lender. (*Id.* ¶¶ 32, 33, 45, 46.) Moreover, Plaintiffs allege that all Other Borrowers are in default on their respective Notes to their respective Lenders. (*Id.* ¶¶ 51-54.)

## *II. Standard of Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## *III. Analysis*

Defendants assert that the complaint should be dismissed for lack of personal jurisdiction, lack of proper venue, and failure to state a claim upon which relief can be granted. (Defs.' Mot. Dismiss 1, ECF No. 28.) The Court concludes that Defendants' objections to personal

4

jurisdiction and venue are not well founded based on provisions in each of the Individual Recourse Guaranties that state,

> With respect to any claim or action arising hereunder, Guarantor (a) irrevocably submits to the jurisdiction of the courts of the State in which the Property is located and the United States District Court located in the county in which the Property is located, and appellate courts from any thereof, (b) irrevocably waives any objection which it may have at any time to the laying on venue of any suit, action or proceeding arising out of or relating to this Guaranty brought in any such court, and (c) irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

(Compl. Ex. 3 at p. 3, Ex. 5 at p. 3.) The complaint is clearly premised upon the enforcement of the Riverview Individual Recourse Guaranty and the Gold Mile Individual Recourse Guaranty, and the two properties at issue in those guaranties are located within the District of Maryland. Thus, Defendants have been properly sued in this Court based upon these two guaranties for payment of the Riverview Note and the Gold Mile Note.

Even so, the Court concludes that the motion to dismiss for failure to state a claim is somewhat meritorious because Plaintiffs have tried to sweep too much into this lawsuit. Plaintiffs have successfully alleged that Riverview Borrower and Gold Mile Borrower defaulted on payment of their respective loans and that Defendants are personally liable for the amounts due and owing on those loans, including unpaid tenant rents. But beyond that, Plaintiffs have also alleged that by virtue of the Riverview Guaranty of Payment, Defendants are personally liable for the Other Borrowers' Loans. Although Defendants may be personally liable for the Other Borrowers' Loans due to their conceded execution of Individual Recourse Guaranties for the Other Properties (Defs.' Mot. Dismiss Supp. Mem. 4, Ex. 1-6), any lawsuit based thereon would have to be brought in a court of competent jurisdiction in the states where the Other Properties are located.

5

Plaintiffs ask this Court to interpret the Individual Recourse Guaranties as incorporating the Riverview Guaranty of Payment's covenant by the Riverview Borrower and Riverview Grantor to guarantee payment for the Other Borrowers' Notes. To do so would be to stretch the Individual Recourse Guaranties beyond their natural meaning.

Inasmuch as the Riverview Individual Recourse Guaranty and the Gold Mile Individual Recourse Guaranty require that they be governed by the law of the state where the property is located (Compl., Ex. 3 at 4, Ex. 5 at 4), and because the property at issue with both these guaranties is located in Maryland, the Court will apply Maryland law in interpreting the relevant documents. Maryland follows the objective interpretation principle in construing contracts. *John L. Mattingly Const. Co., Inc. v. Hartford Underwriters Ins. Co.*, 999 A.2d 1066, 1074 (Md. 2010). If the contract's language is unambiguous, then the Court gives effect to its plain, ordinary, and usual meaning, taking into consideration the context in which the language is used, *id.*, and does not delve into what the parties may have subjectively intended. *Rourke v. Amchem Products, Inc.*, 863 A.2d 926, 941 (Md. 2004). "Where the contract comprises two or more documents, the documents are to be construed together, harmoniously, so that, to the extent possible, all of the provisions can be given effect." *Id.*

In order to impart Plaintiffs' desired interpretation to the Individual Recourse Guaranties, one is required to take several sequential steps. The Court notes that Plaintiffs' argument focuses only upon the Riverview Individual Recourse Guaranty even though the Gold Mile Individual Recourse Guaranty has identical wording. Consequently, the Court will refer only to the Riverview document. The following are the steps to be taken in Plaintiffs' preferred analysis.

*First*, the Riverview Individual Recourse Guaranty provides, in effect, that Defendants shall become liable for the "Debt" if the property encumbered by the Riverview Security

6

Instrument becomes an asset in a voluntary bankruptcy or insolvency proceeding (other events may also trigger this liability but they are not pertinent to this case). (Compl., Ex. 3 at p. 1.) Plaintiffs allege that the Riverview Grantor filed a voluntary petition of bankruptcy on June 12, 2012, thereby causing the Riverview Property to become an asset of the bankruptcy estate and causing Defendants to become liable for the "Debt." (*Id.* ¶¶ 36, 37.)

*Second*, this guaranty defines "Debt" to mean the following:

> the principal sum evidenced by the Note and secured by the Security Instrument, or so much thereof as may be outstanding from time to time, together with interest thereon at the rate of interest specified in the Note and all other sums other than principal or interest which may or shall become due and payable pursuant to the provisions of the Note, the Security Instrument or the other Loan Documents.

(*Id.* Ex. 3 at p. 1.)

*Third*, the Riverview Individual Recourse Guaranty does not define "Loan Documents" but states that term has the meaning ascribed to it in the "Note," which is the "certain promissory note in the Principal Sum," which, in turn, is defined in Schedule 1 attached to the guaranty. (*Id.*) Schedule 1 states the Principal Sum means $1,750,000. (*Id.* Sch. 1.)

*Fourth*, the Riverview Note defines "Loan Documents" as follows:

> "Loan Documents" shall mean this Note, the Grantor Guaranty, the Guaranty (as defined in the Security Instrument), the Security Instrument, and any other documents or instruments which now or shall hereafter wholly or partially secure or guarantee payment of this Note or which have otherwise been executed by Borrower and/or any other person in connection with the Loan.

(*Id.* Ex. 1 at p. 1.)

*Fifth*, the "Guaranty (as defined in the Security Instrument)" refers to the Riverview Guaranty of Payment by which the Riverview Borrower and the Riverview Grantor agreed to guarantee payment of the Other Notes. (Riverview Security Instrument at p. 1, ECF No. 25, Ex. 1.) Thus, the Plaintiffs contend, Sheppard and Wolman agreed in the Riverview Individual

Recourse Guaranty to be personally liable for everything for which Riverview Borrower and Riverview Grantor agreed to be liable.

Plaintiffs' reasoning follows a tortuous path and overlooks at least a couple of obstacles to their desired interpretation of the scope of Defendants' liability under the Riverview Individual Recourse of Guaranty (or any other Individual Recourse of Guaranty). Initially, the Court notes that each loan has its own set of documents that refer to "the Property," which differs according to the location of the respective properties, and that refer to "the Note," which is always defined by "the Principal Sum." Only in the Riverview Guaranty of Payment is reference made to "Other Loans," "Other Notes," "Other Borrowers," and "Other Properties' Loan Documents." These explicit references are clearly differentiated in this guaranty from "the Loan," "the Note," "the Borrower," and "the Security Instrument encumbering the Property," and all of the latter terms plainly refer to the Riverview Loan. The drafter of the Individual Recourse Guaranties could just as easily have employed within those guaranties the terms relating to the "Other Notes," etc., but chose only to use those terms in the Riverview Guaranty of Payment, which was not signed by Defendants as individuals but by Riverview Borrower and Riverview Grantor as corporate entities. The Court concludes that "Loan Documents" as used in the Individual Recourse Guaranties means the documents necessary to accomplish the loan transaction for the particular property that is the subject of the loan transaction. Although Plaintiffs may have intended to include liability for all of the Other Notes in the Individual Recourse Guaranties, their subjective intent is irrelevant. It is the plain meaning of the unambiguous terms that controls.

This interpretation is reinforced by the limiting language in the Riverview Note's definition of "Loan Documents." There, it says the documents to be included in "Loan

Documents" are those that "secure or guarantee payment of *this Note* or which have otherwise been executed by Borrower and/or any other person *in connection with the Loan*." The focus is undoubtedly upon the Riverview Note and the Riverview Loan, not on other notes or loans, or as the Riverview Guaranty of Payment refers to them, "Other Notes" and "Other Loans."

An additional complication resulting from Plaintiffs' proposed interpretation is that this Court would be called upon to adjudicate rights and liabilities as to properties in other states, and clearly, the contractual scheme contemplates that suits relating to, for example, the Virginia property be adjudicated in Virginia, and likewise for the properties in Tennessee, Florida, and Texas, that suits should be undertaken in those respective states. Plaintiffs are not without a remedy here. They have the remedy they carefully drafted into all of their governing documents, and that is suit in the various states where the various properties are located.

Finally, Plaintiffs have failed to allege specific factual content that permits the Court to infer that Plaintiffs other than the Riverview Lender and the Gold Mile Lender have standing to sue Defendants Sheppard and Wolman for breach of the Riverview Individual Recourse Guaranty and the Gold Mile Individual Recourse Guaranty. (*See* Defs.' Mot. Dismiss Supp. Mem. 9 n.5.) As a result, the other Plaintiffs will be dismissed from the lawsuit.

## *IV. Conclusion*

Defendants have been properly sued in this Court on the Riverview Individual Recourse Guaranty and the Gold Mile Individual Recourse Guaranty, and their motion to dismiss for lack of personal jurisdiction and improper venue will be denied. The claims against Defendant will be narrowed to include only the amounts due and owing under the Riverview Note, the Riverview Loan, the Gold Mile Note, and the Gold Mile Loan. Plaintiffs other than the Riverview Lender and the Gold Mile Lender will be dismissed.

DATED this 9th day of April, 2014.

BY THE COURT:

/s/
James K. Bredar
United States District Judge