IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **LBCMT 2007-C3 URBANA PIKE, LLC,** *et al.*, | * | |
| | * | |
| **Plaintiffs** | * | |
| v. | * | CIVIL NO. JKB-12-3056 |
| **ERIC D. SHEPPARD** *et al.*, | * | |
| | * | |
| **Defendants** | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM**

Pending before the Court are Plaintiffs' motion for summary judgment (ECF No. 71) and Defendant Eric D. Sheppard's cross-motion for summary judgment (ECF No. 75). Also pending is Plaintiffs' motion to strike Sheppard's untimely reply on his cross-motion. (ECF No. 78.) Plaintiffs' motion for summary judgment is directed at both Sheppard and his codefendant Philip Wolman. At one time, both Sheppard and Wolman were represented by the same counsel, but counsel withdrew from representation of Wolman while continuing representation of Sheppard. (ECF Nos. 55, 56, 59.) Thus, the cross-motion has only been filed by Sheppard. Wolman has filed nothing in the case since his counsel withdrew.

The motions have been briefed (ECF Nos. 76, 77, 79, 80), and no hearing is required, Local Rule 105.6 (D. Md. 2014). The motion to strike will be granted based upon the lack of a request by Sheppard for late filing of his reply and based upon the absence of good cause.[1]

---

[1] Defendants have had trouble meeting prior court deadlines and their lateness has created unnecessary work for this Court and opposing parties. In a prior order setting aside entries of default against Defendants, the Court in granting Defendants' motion stated, "Defendants are put on notice that failure to meet future court deadlines will place them at risk of another default being entered against them." (Mem. & Order 1, Sept. 12, 2013, ECF No. 27.) In his opposition to the motion to strike, Sheppard states, "While Sheppard and his counsel realize the

Plaintiffs' motion for summary judgment will be granted as to both Defendants on Count I, limited to the claim for the deficiency balance and related charges on the Riverview Loan, and Plaintiffs' motion for summary judgment will be denied as to both Defendants on Count II. Plaintiffs have presented no argument as to Count III and have apparently abandoned that claim, which will be dismissed. Sheppard's cross-motion will be denied as to Count I and granted as to Count II, and the Court will enter judgment on Count II in favor of both Defendants.

## I. Background

The Court has previously recounted the facts leading up to Plaintiffs' complaint in a memorandum opinion in which several plaintiffs were dismissed and the scope of the case was narrowed to include only two loans, called the Riverview Loan and the Gold Mile Loan. (ECF No. 38.) Briefly, the remaining Plaintiffs and the Defendants engaged in a set of transactions regarding two commercial properties in Frederick County, Maryland. For each property, a special-purpose entity ("SPE") was created by Defendants to own the property and another SPE was created by Defendants to borrow money to purchase the property. Similarly, each Plaintiff was created to serve as lender on the corresponding property. The two loans at issue here went into default, and Plaintiffs and Defendants have been engaged in this litigation as a result. Counts I and II are both claims for breach of contract.

## II. Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

importance of deadlines and certainly beg the Court's pardon for the short delay in filing the Reply, it would be inequitable to strike the Reply simply because it was filed late, in the absence of any showing of prejudice to the Plaintiffs." (Def.'s Opp'n 2, ECF No. 79.) This sort of afterthought to rationalize failure to meet a court filing deadline is disrespectful of the Court and of opposing parties and counsel. Sheppard has provided no good cause for his late filing, and to the extent his opposition to the motion to strike can be interpreted as a motion for leave of Court to file beyond the established deadline, his motion is denied.

R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).  The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.  The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1).  Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4). Each cross-motion for summary judgment is viewed separately on its own merits. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).  "When considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* (citation omitted).

### III. Analysis

For each loan, Sheppard and Wolman executed an Individual Recourse Guaranty ("IRG"). The operative wording is identical for both the Riverview IRG and the Gold Mile IRG.

Plaintiffs seek to hold Sheppard and Wolman liable for the two loans pursuant to these IRGs. But they focus on different language within the IRGs as between the two claims.

   A. *Count I – Breach of Riverview Individual Recourse Guaranty*

In Count I pertaining to the Riverview Loan, Plaintiffs rely upon the following language:

> . . . [Defendants] (hereinafter collectively referred to as "Guarantor") jointly and severally hereby absolutely and unconditionally guarantee to Lender the prompt and unconditional payment of the Guaranteed Recourse Obligations of Borrower . . . .
>
> . . .
>
>    The term "Debt" as used in this Guaranty shall mean the principal sum evidenced by the Note and secured by the Security Instrument, or so much thereof as may be outstanding from time to time, together with interest thereon at the rate of interest specified in the Note and all other sums other than principal or interest which may or shall become due and payable pursuant to the provisions of the Note, the Security Instrument or the Loan Documents.
>
>    The term "Guaranteed Recourse Obligations of Borrower" as used in this Guaranty shall mean all obligations and liabilities of Borrower set forth in subparagraphs (a) and (b) below for which Borrower shall be personally liable pursuant to the Note, Security Instrument or the other Loan Documents:
>
> . . .
>
>    (b)  the entire Debt . . . (ii) if the Property or any part thereof shall become an asset in (1) a voluntary bankruptcy or insolvency proceeding (A) which is commenced by any member of the Borrowing Group . . . .

(Pls.' Mot. Summ. J. Ex. 4, Riverview IRG.)

The owner of the Riverview property was WSG Riverview, LP, which filed a Chapter 11 proceeding in the bankruptcy court of the Eastern District of Virginia. *In re WSG Riverview, LP*, Case No. 12-13888 (E.D. Va.). (Pls.' Mot. Summ. J. Ex. 5, Riverview Bankruptcy Schedules.) On its bankruptcy schedule, WSG Riverview, LP, listed 5461 Urbana Pike, Frederick, Maryland 21704, as real property in which WSG Riverview, LP, had a fee simple interest. (*Id.*) Defendants do not dispute that is the same property on which the Riverview Loan was made (*see*

Sheppard Aff. ¶¶ 1-3, ECF No. 73-1), nor do they dispute that the bankruptcy filing was made. Chapter 11 is a section of the bankruptcy code that permits the filing by debtors of voluntary petitions for bankruptcy. Thus, the contingency triggering Sheppard's and Wolman's obligation under the Riverview IRG has occurred.

Sheppard's only argument on Count I is that the Original Lender, Lehman Brothers, FSB, did not transfer the Riverview IRG to the first transferee, LaSalle Bank N.A., in the "chain of title." (Sheppard's Opp'n & Cross-Mot. Summ. J. 6-7.) Subsequently, LaSalle merged with Bank of America, N.A., which assigned the loan to U.S. Bank N.A., which in turn assigned the loan to the Riverview Plaintiff, LBCMT 2007-C3 Urbana Pike, LLC. (Riverview Note, Allonges, Pls.' Mot. Summ. J. Ex. 2.) Thus, he argues, the Riverview Plaintiff never acquired the Original Lender's rights in the Riverview IRG and, therefore, has no cause of action against him.

Sheppard relies upon a document entitled, "Assignment of Indemnity Deed of Trust, and Security Agreement." (Sheppard's Opp'n & Cross-Mot. Summ. J. Ex. 7.) The language of the assignment seems to contradict Sheppard's argument. It specifically recites that Lehman Brothers "does hereby grant, bargain, sell, convey, assign, transfer and set over unto LaSalle . . . all of the right, title and interest of Assignor in and to . . . [a]ny and all other related security instruments which secure the indebtedness and/or obligation secured by the Mortgage." (*Id.*) The Riverview IRG is arguably, perhaps indubitably, a "related security instrument" securing the indebtedness on the Riverview Loan. But even if not, Plaintiffs have provided persuasive authority in Maryland law for the proposition that a guaranty on a note is automatically transferred to an assignee of the note without need for an express, corresponding assignment of

the guaranty. *See Bachmann v. Glazer & Glazer, Inc.*, 559 A.2d 365, 370 (Md. 1989) ("Assignment of a debt is held to operate as an assignment of a guaranty of the debt.")

Sheppard presents no other argument with respect to Count I. The Court concludes no genuine dispute of material fact exists as to Count I and that Plaintiff LBCMT 2007-C3 Urbana Pike, LLC, is entitled to summary judgment on this count.[2]

### B. Count II – Breach of Gold Mile Individual Recourse Guaranty (Misappropriation of Rents)

As to the Gold Mile Loan, Plaintiffs assert that the tenant rents collected on the Gold Mile Property after default had occurred should have been remitted to the Gold Mile Lender, but were not. Plaintiffs' argument as to Defendants' liability derives from language in the Gold Mile IRG which includes in the Guaranteed Recourse Obligations of Borrower "any and all Losses (as hereinafter defined) imposed upon or incurred by or asserted against Lender and directly or indirectly arising out of or in connection with any of the following: . . . (ii) Borrower's misapplication or misappropriation of (A) Rents received by Borrower after the occurrence of an Event of Default . . . ." (Pls.' Mot. Summ. J. Ex. 11.) In addition to Plaintiffs' argument based upon interpretation of the language of the IRG, they assert a second argument: that Defendants are bound by a judgment from the Eastern District of Virginia in favor of the Gold Mile Plaintiff (LBCMT 2007-C3 Patrick Street, LLC), *inter alia*, against WSG Development Company for conversion of unpaid rents; this argument relies upon Plaintiffs' additional assertion that WSG Development Company is also a company "created, owned and controlled by Defendants." (Pls.' Mot. Summ. J. Supp. Mem. 11.) Consequently, Plaintiffs contend the doctrine of claim preclusion effectively precludes this Court from considering the merits of Plaintiffs' claim

---

[2] Plaintiffs have requested judgment for the Riverview Plaintiff only on the Riverview Loan and for the Gold Mile Plaintiff only on the Gold Mile Loan. (Proposed Order, Pls.' Mot. Summ. J., ECF No. 71-20.) This difference will be reflected in the final judgment in the case.

against Defendants.  If so, then the Gold Mile Plaintiff seems to have argued itself right out of Court.  This point will be discussed later.  As to the merits, the evidence Plaintiffs have presented to this Court plainly does not support their breach of contract claim.  That raises the question of whether evidence other than what is before this Court was presented to the other court that rendered the judgment.

On the merits, the language of the IRG subjects Defendants to joint and several liability for the Guaranteed Recourse Obligations of Borrower, which the IRG defines as "all obligations and liabilities of Borrower set forth in subparagraphs (a) and (b) below *for which Borrower shall be personally liable pursuant to the Note, the Security Instrument or the other Loan Documents*." (*Id.* Ex. 11 (emphasis added).)  But Plaintiffs have provided no evidence from which the Court can conclude that the Gold Mile Borrower, *i.e.*, WSG Gold Mile Two, LLC, was *personally liable* for remitting rents to the Gold Mile Lender.  Plaintiffs assert that Defendants executed the Gold Mile Indemnity Assignment of Leases and Rents, which was "a present absolute assignment of all of the rents, with a revocable license back to the borrower to collect the rents." (Pls.' Mot. Summ. J. Supp. Mem. 9-10.)  However, the Gold Mile Borrower was not a party to that contract.  Instead, the assignor in that document was WSG Gold Mile LP, the owner of the property.  In point of fact, Sheppard (only Sheppard, not Wolman) executed the Gold Mile Indemnity Assignment of Leases and Rents not in his personal capacity but in his capacity as manager of WSG Gold Mile LLC (the Gold Mile Borrower), which in turn was executing the contract in its capacity as the general partner of WSG Gold Mile LP.  In the case in the Eastern District of Virginia, the court there stated, "As collateral, the Borrowers assigned the right to receive rents from their property to the Lenders. . . ."  That conclusion is not supported by the evidence before this Court.  It is possible that the court in the *WSG Development Company* case

was presented with evidence that did establish such a duty on the part of the Gold Mile Borrower; if so, Plaintiffs have failed to present that same evidence here.  Without evidence of the Gold Mile Borrower's *personal liability* for assignment of rents to the Gold Mile Lender, Plaintiffs' argument would appear to be premised upon the supposed interchangeability of the various entities executing the documents.  But contractual liability has to be based upon what is in the four corners of the governing contracts, and the Court cannot simply substitute one party for another from contract to contract.

Having determined that the Gold Mile Plaintiff's claim against Defendants has no merit, the Court must still address Plaintiffs' argument as to claim preclusion.  Preliminarily, the Court notes that Plaintiffs have based their argument upon Maryland law.  "The Full Faith and Credit Statute, 28 U.S.C. § 1738, obligates federal courts to apply state preclusion rules to determine whether a prior state court judgment has either issue or claim preclusive effect in a [federal] action."  *Dionne v. Mayor of Baltimore*, 40 F.3d 677, 682 (4th Cir. 1994).  However, "'federal, not state, law determines the preclusive effect of a prior federal judgment,' including actions where 'a federal court sits in diversity or has some other basis of jurisdiction.'"  *Mbongo v. JP Morgan Chase Bank, N.A.*, Civ. No. PWG-14-1620, 2014 U.S. Dist. LEXIS 106224, at *8 (D. Md. Aug. 4, 2014) (quoting *Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1179 (4th Cir. 1989)), *aff'd*, 552 F. App'x 258 (4th Cir. 2014).  Because the prior judgment at issue here was a federal judgment, the Court shall apply federal law in determining its preclusive effect.

As earlier observed, Plaintiffs' argument seems to defeat itself.  Claim preclusion, or *res judicata* as it is sometimes called, is an affirmative defense that, when established, "bars a claim asserted in a later action."  *Grausz v. Englander*, 321 F.3d 467, 472 (4th Cir. 2003).  *See also United States v. Mendoza*, 464 U.S. 154, 159 n.3 (1984) ("The Restatement of Judgments speaks

of *res judicata* as 'claim preclusion' and of collateral estoppel as 'issue preclusion.' *Restatement (Second) of Judgments § 27 (1982).*"); *Saudi v. Ship Switzerland, S.A.*, 93 F. App'x 516, 520 n.1 (4th Cir. 2004) (unpublished) ("The term '*res judicata*' is often used, . . . and perhaps most commonly used, in a narrower sense to denote only 'claim preclusion' as distinguished from 'issue preclusion.'"). A claim subsequent to a preexisting judgment is precluded when three circumstances are present:

> 1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and 3) the claim in the second matter is based upon the same cause of action involved in the earlier proceeding.

*Grausz*, 321 F.3d at 472 (alterations omitted).

If all of these requirements are met, then the Gold Mile Plaintiff has no basis for suing Defendants in the present case for the same tenant rent money awarded in the earlier judgment against WSG Development Company. The first factor is not in dispute. As for the second factor, the Court concludes Defendants are not in privity with WSG Development Company, despite evidence that they own and manage the company. "To be in privity with a party to a former litigation, the non-party must be 'so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved.'" *Martin v. Am. Bancorporation Retirement Plan*, 407 F.3d 643, 651 (4th Cir. 2005). The question before this Court is the personal liability of Defendants. That question was never presented to or resolved by the prior litigation in the Eastern District of Virginia; the court's opinion never mentions, much less rules upon, Defendants' liability under the Individual Recourse Guaranty. Only the corporate liability of WSG Development Company was at stake there, and it has no bearing on the present case. Thus, the prior corporate defendant and the present Defendants do

not represent precisely the same legal right in respect to the subject matter before this Court. Because of the Court's conclusion with respect to the second factor of claim preclusion, it need not reach the third factor.

But, of course, Plaintiffs' purpose in raising claim preclusion—and the very name of the doctrine is troublesome for them since Plaintiffs are the ones here making a claim rather than Defendants—was to somehow translate the Eastern District of Virginia's judgment on the converted Gold Mile tenant rent money into a judgment in this Court against these Defendants for the same money. If the prior judgment really were against the Defendants in the instant case, then the Gold Mile Plaintiff should simply proceed to enforce it against them through proceedings in the Eastern District of Virginia. But the Gold Mile Plaintiff cannot enforce the prior judgment against the Defendants personally because they were not parties to that case. And no authority has been presented in Plaintiffs' arguments for transforming the prior judgment into this Court's judgment.

What Plaintiffs may be attempting to assert is issue preclusion rather than claim preclusion. Specifically, they endeavor to prevent Defendants from relitigating an issue allegedly resolved in the prior litigation. Issue preclusion is narrower and comes into play when the later litigation arises from a different cause of action from that in the prior litigation. *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996). The doctrine of issue preclusion "operates to bar subsequent litigation of those legal and factual issues common to both actions that were 'actually and necessarily determined by a court of competent jurisdiction' in the first litigation." *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). Since the Gold Mile IRG was not analyzed or ruled upon by the Eastern District of Virginia in the prior case, it follows that the legal issue of Defendants' liability under it was never "actually and necessarily

determined." Although that court did make a factual determination as to the amount of tenant rent money unlawfully converted by WSG Development Company, that factual issue is immaterial in the present case since the Court has already determined that Plaintiffs have failed to prove Defendants' personal liability for remittance of tenant rents to the Gold Mile Plaintiff. Because the issues Plaintiffs seek to bind upon Defendants were not actually and necessarily determined in the earlier case, the Court need not reach the question of whether to exercise its broad discretion to permit Plaintiffs' requested offensive use of issue preclusion. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979) (granting trial courts broad discretion to determine when offensive collateral estoppel should be applied).

As to Count II, the Court concludes that no genuine dispute as to material fact exists, that Plaintiffs are not entitled to judgment as a matter of law, and that Defendants are entitled to judgment in their favor as a matter of law.

## *IV. Conclusion*

The Riverview Plaintiff is entitled to summary judgment on Count I, Defendants are entitled to judgment on Count II, and Plaintiffs have abandoned Count III, which will be dismissed. A separate order follows.

DATED this 22nd day of April, 2015.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge